In re: Tiabra HALL, Plaintiff,

v.

Robert H. LEVINE, M.D., Defendant.

No. 04SA179.

Supreme Court of Colorado.

Jan. 10, 2005.

Purvis, Gray & Murphy, LLP, Patrick T. Murphy, Michael J. Thomson, French & Stone, P.C., Joseph French, Boulder, for Plaintiff.

Pryor, Johnson, Montoya, Carney & Karr, P.C., Elizabeth C. Moran, Scott S. Nixon, Greenwood Village, for Defendant.

Justice RICE delivered the Opinion of the Court.

This is an original proceeding under C.A.R. 21 in which Defendant–Petitioner Robert Levine, M.D. seeks review of an order of the Boulder County District Court granting Plaintiff–Respondent Tiabra Hall's request for a new trial. Petitioner asks this court to reverse the order and remand to the trial court with instructions to vacate its order and reinstate judgment in favor of Petitioner. We issued a rule to show cause to review whether the trial court violated CRE 606(b) in setting aside the verdict and judgment, and in ordering a new trial. We now make this rule absolute and remand to the trial court with instructions to vacate its order and reinstate judgment in favor of Petitioner.

## I. Facts and Procedure

Respondent Tiabra Hall brought a medical negligence action against Petitioner Robert Levine in Boulder County District Court ("trial court"). After trial to a jury, the jurors returned a verdict in favor of Petitioner. All six jurors signed the verdict form. When asked whether the verdict was unanimous, the foreperson responded in the affirmative; no jurors dissented. Both attorneys declined the trial court's offer to poll the jury.

The trial court then gave the jury its discharge instructions, informing them that they were free to talk with anyone about the case, including attorneys in the case, friends, and relatives. The court also requested that the jury return to the jury room for a few minutes so that the court could answer their questions and thank them for their service. The jury was excused, left the courtroom, and went across the hall to the jury room to await the judge.

After excusing the jury, the trial court entered judgment on the record for Petitioner, and then recessed to converse informally with the jury.

During the first few minutes of the trial judge's conversation with the jury, one of the jurors commented that the verdict had not in fact been unanimous, and that the jury entered a verdict for the Petitioner only because they could not agree. Several other jurors confirmed this statement. Upon hearing this, the judge immediately departed the jury room without further comment, and notified the attorneys as to what had transpired.

While the judge and the attorneys were discussing these events, the clerk brought in a note from the jurors, containing the question: "What is the proceeding if we agree that we cannot agree unanimously on 2 of the

3 points in question?" It is not known when the note was written, or by whom; nor is it clear whether the judge discussed the note with counsel at that time.

Over defense counsel's objection, the trial court returned the jury, which had remained in the jury room, to the courtroom, and polled the jury as to whether each "believed that the plaintiff had proved her claims by a preponderance of the evidence"; four jurors answered "no" and two answered "yes."

Believing that the jurors could not be sent back for further deliberation after they had been discharged, the trial court dismissed the jury, entered a written judgment for Petitioner, and established a briefing schedule for post-trial motions.

Respondent subsequently filed a motion for a new trial, arguing that a new trial was necessary because the jury's verdict was not unanimous. Petitioner objected on two grounds. First, Petitioner argued that CRE 606(b) precludes the use of jurors' post-judgment statements about the content of their deliberations to impeach the verdict which they represented to be unanimous. Second, Petitioner argued that the law precludes recalling the jury to reconsider or amend its verdict once judgment has been entered and the jury discharged.

The trial court granted Respondent's motion for new trial, holding that although the jury had been discharged and judgment entered, Colorado case law permits the jury to be recalled for further deliberations as long as the jurors have not dispersed, and have not had the opportunity to be influenced by others. In light of the jurors' statements indicating their lack of unanimity, and because the jury had not dispersed after being discharged, the trial court concluded that the Respondent was entitled to a new trial. The trial court did not address the effect, if any, of CRE 606(b) in its order. The trial court scheduled the new trial for the following year. Petitioner consequently filed a petition pursuant to C.A.R. 21.

We issued a rule to show cause to determine (1) whether CRE 606(b) precludes the use of post-judgment juror conversations with the court and juror polling to impeach a verdict which the jury represented to be unanimous; and (2) whether a discharged but undispersed jury is still under the court's control for the purposes of recall and reconsideration of the verdict. We now make this rule absolute and remand this case to the trial court with instructions to vacate its order and reinstate judgment in favor of Petitioner.

## II. Analysis
### A. Jurisdiction and Standard of Review

■ C.A.R. 21 authorizes this court to exercise original jurisdiction to review a trial court's abuse of discretion when no adequate appellate remedy exists. *People v. Miller*, 25 P.3d 1230, 1231 (Colo.2001). In this case, Petitioner alleges that the trial court abused its discretion in granting a new trial after discovering that the jury's initial verdict was not unanimous. Furthermore, Petitioner has no adequate appellate remedy because an order granting a new trial is interlocutory and not immediately reviewable. *Bowman v. Songer*, 820 P.2d 1110, 1112 (Colo.1991). Accordingly, relief under C.A.R. 21 is appropriate in this case.

### B. CRE 606(b) Precludes the Use of Jurors' Statements to Impeach the Jury's Unanimous Verdict.

■ Petitioner argues that CRE 606(b) precludes the use of jurors' post-verdict statements to the court to impeach the unanimous verdict. We agree. Because this case involves post-verdict juror statements made outside of court, we must first address whether the trial court's use of such statements was proper.

■ CRE 606(b) precludes the use of juror testimony about jury deliberations to impeach a verdict. The rule provides in relevant part that:

Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or

concerning his mental processes in connection therewith.

CRE 606(b).[1] CRE 606(b) is designed to promote finality of verdicts, shield verdicts from impeachment, and protect the privacy of jurors. *Stewart v. Rice,* 47 P.3d 316, 322 (Colo.2002); *Ravin v. Gambrell,* 788 P.2d 817, 820 (Colo.1990).

To this end, we have held that where a jury is polled and unanimously concurs in a verdict, a court may not consider juror affidavits regarding the unanimity of the verdict when they concern the jurors' mental processes during deliberation. *People v. Collins,* 730 P.2d 293, 301–02 (Colo.1987). This rule applies even if the affidavits show that the jury misunderstood the law or facts, failed to follow instructions, or applied the wrong legal standard. *Id.; Martinez v. Ashton,* 124 Colo. 23, 26, 233 P.2d 871, 873 (1951); *see also Stewart,* 47 P.3d at 323 (CRE 606(b) excludes "juror testimony or affidavits divulging juror deliberations, thought processes, confusion, mistake, intent, or other verdict impeaching grounds").

Similarly, we have held that once the court has heard and received the verdict, entering judgment thereon, the jurors "are estopped from and after that moment to impeach the verdict." *Martinez,* 124 Colo. at 26, 233 P.2d at 872. Thus, "[i]f the verdict when announced, was not the verdict of any juror, it was the duty of that juror to speak, otherwise he is foreclosed by his silence. If we held to the contrary, no verdict would be safe from fraud and abuse." *Id.* at 27, 233 P.2d at 873.

In *Martinez,* the jury returned a verdict in favor of defendant. 124 Colo. at 25, 233 P.2d at 872. After the jury collectively confirmed its verdict, the trial court entered judgment for defendant and discharged the jurors. *Id.* Subsequently, two jurors disclosed to the court and others that the verdict was not unanimous. *Id.* Consequently, the trial court, on its own motion, summoned and took testimony from each of the jurors. *Id.* Based upon this testimony, the trial court granted a new trial due to jury misconduct. *Id.* We reversed, holding that jury affidavits may not be used to show juror misconduct. *Id.* at 27, 233 P.2d at 873.

Although *Martinez* predates the enactment of CRE 606(b), CRE 606(b) codifies the common law rule set forth in *Martinez. See People v. Black,* 725 P.2d 8, 9 (Colo.App. 1986) ("CRE 606(b) codifies the previously existing common law rule which precludes inquiry into the mental processes of jurors in arriving at a verdict or into any matter or statement occurring during the jury's deliberations.").

The facts in this case are similar to those in *Martinez.* Here, as in *Martinez,* the jurors failed to follow instructions requiring the verdict to be unanimous. After returning a verdict in favor of Petitioner, several jurors disclosed to the court that the verdict was not unanimous. Like the court in *Martinez,* the court in this case based its grant of a new trial on these disclosures.

The fact that the court in this case did not delve into the jurors' mental deliberations on the record during its post-verdict jury poll does not affect our reasoning. As our holding in *Martinez* indicates, the jurors' post-verdict statements made to the court in the jury room clearly would have been inadmissible in affidavit form. As such, it was impermissible for the trial court to use them as a basis for recalling the jury.

Moreover, the fact that neither the trial court nor counsel elected to poll the jurors in this case does not alter our decision. All six jurors in this case signed the verdict form. Those signatures on the verdict form had the same effect as polling in affirming the concurrence of each member. *See Stewart,* 47 P.3d at 322 ("[S]igning the verdict form acknowledges the verdict as the product of each juror's deliberation.").

In conclusion, pursuant to CRE 606(b), the trial court erred in using jurors' post-verdict

---

1. There are two exceptions to CRE 606(b). A juror may testify as to whether "extraneous prejudicial information was improperly brought to the jurors' attention or whether any outside influence was improperly brought to bear upon the juror." CRE 606(b). Neither exception applies here.

statements to impeach the verdict.[2] For this reason, the trial court's grant of a new trial was improper. We therefore make this rule absolute and remand to the trial court with instructions to vacate its order and reinstate judgment in favor of Petitioner.

2. We recognize that in granting Respondent's motion for a new trial, the trial court relied not on CRE 606(b), but on our decision in *Montanez v. People*, 966 P.2d 1035, 1037 (Colo.1998), and held that although the jury had been discharged, it had not dispersed and therefore recall was proper. However, the trial court erred in not first considering whether the post-verdict, out-of-court jury statements were admissible pursuant to CRE 606(b), and thus the court's reliance on *Montanez* was misplaced.

Specifically, in *Montanez*, after the court discharged the jury, the bailiff notified the court that the jury had mistakenly filled out a verdict form. 966 P.2d at 1036. The court recalled the jury, sent them to the jury room for further deliberations, and subsequently entered a new verdict. *Id.* Likewise, in *Kreiser v. People*, 199 Colo. 20, 604 P.2d 27 (1979), upon which we relied in *Montanez*, after the jury was discharged, the district attorney discovered that the verdict form omitted a critical word. 199 Colo. at 22, 604 P.2d at 28. The district attorney immediately brought the clerical defect to the trial court's attention. *See id.* The trial court thereafter recalled the jury. *Id.*

In both *Kreiser* and *Montanez*, we discussed whether recall of the jurors was proper even though they had been discharged. 199 Colo. at 23, 604 P.2d at 29, 966 P.2d at 1037. However, because the defects in the *Kreiser* and *Montanez* verdicts were not discovered as a result of post-verdict, out-of-court juror statements, we did not consider CRE 606(b) or its common law predecessors.

Because this case involves post-verdict, out-of-court juror statements used to impeach a unanimous verdict, we do not address the second issue presented in this appeal, namely whether a discharged but undispersed jury is still under the court's control for the purposes of recall and reconsideration of a verdict.